IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| ROBERT J. DEMELLO, JR., | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) CV 114-043 |
| | ) (Formerly CR 110-203) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner, an inmate at Federal Correctional Institution Fort Dix in New Jersey has filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. This case is now before the Court on Respondent's motion to dismiss, (doc. no. 4), which Petitioner opposes, (doc. no. 6). For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Respondent's motion to dismiss be **GRANTED**, that Petitioner's § 2255 motion be **DISMISSED** without an evidentiary hearing, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

I.     **BACKGROUND**

    A.     **Indictment**

The grand jury in the Southern District of Georgia, on August 5, 2010, indicted Petitioner, along with two co-defendants, with one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349, and three counts of bank fraud, in violation of 18

U.S.C. § 1344. U.S. v. Demello, CR 110-203, doc. no. 1 (S.D. Ga. Aug. 5, 2010) (hereinafter "CR 110-203"). The indictment also contained a forfeiture allegation stating that upon his conviction of the offenses alleged in counts one through four of the indictment, Petitioner must forfeit any property or proceeds obtained as a result of the offenses, including but not limited to his "30 Walt Disney Sericels worth approximately $100,000 or more." Id. at 11-12. The four counts in the indictment each carried a potential sentence of imprisonment of not more than thirty years. Id., doc. no. 2, p. 1. The Court first appointed attorney Charles Mayers pursuant to the Criminal Justice Act to represent Petitioner, and in accordance with Mr. Mayers' request, also appointed Richard Pacheco, II, as co-counsel. Id., doc. nos. 75, 93, 107.

### B. Agreement to Plead Guilty

Petitioner reached an agreement with the government to plead guilty to one count of bank fraud, in violation of 18 U.S.C. § 1344. Id., doc. nos. 146-48. On July 21, 2011, United States District Judge J. Randal Hall held a change of plea hearing. During the change of plea hearing, Judge Hall established Petitioner's competence to enter a guilty plea if he so desired. Id., doc. no. 193 (hereinafter "Rule 11 Tr."), pp. 7-8. Petitioner also testified under oath that he was satisfied with the assistance he had received from his two attorneys and that he had read and reviewed the plea agreement with counsel before signing it. Id. at 7, 9, 11-12.

Judge Hall reviewed the charges in Petitioner's case and the possible statutory penalty for the charge to which Petitioner was pleading guilty. Id. at 5, 13-14. Judge Hall informed Petitioner that conviction on the one charge of bank fraud to which he was

pleading guilty carried a sentence of imprisonment for not more than thirty years, a fine of not more than one million dollars, and a term of supervised release of not more than five years. Id. at 13-14. When asked, Petitioner confirmed that he understood the possible penalties. Id. at 14. Judge Hall also explained that upon entry of a guilty plea, he would order the preparation of a Presentence Investigation Report ("PSI"), and Petitioner's sentence would be based on the information in the PSI. Id. at 15. Judge Hall specifically explained the PSI would calculate an advisory sentencing guideline range, but he could sentence Petitioner within the range, below the range, or above the range. Id. at 16. Petitioner stated that he understood the sentencing process described by Judge Hall and that no one had promised him that he would receive a particular sentence in the case. Id.

Judge Hall also explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed that he clearly understood those rights. Id. at 9-11. Among the rights explained, Judge Hall reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent. Id.

Petitioner's plea agreement included a broad appeal and collateral attack waiver provision that stated in relevant part:

> To the maximum extent permitted by federal law, the defendant voluntarily and expressly waives the right to appeal the conviction and sentence and the right to collaterally attack the conviction and sentence in any post-conviction proceeding, including a § 2255 proceeding, on any ground, except that: the defendant may file a direct appeal of the sentence if it exceeds the statutory maximum; and the defendant may file a direct appeal of the sentence if, by variance or upward departure, the sentence is higher than the advisory sentencing guideline range as found by the

3

sentencing court.

CR 110-203, doc. no. 114, pp. 6-7. By signing the plea agreement, Petitioner attested that he had read and understood the plea agreement and that it accurately set forth the terms and conditions of his agreement with the government. Id. at 13.

In addition, Judge Hall reviewed the appeal and collateral attack waiver as follows:

> You've agreed to cooperate truthfully and completely at all times, and you've agreed to waive your rights to appeal your sentence. That would be a direct appeal of your conviction and sentence and an indirect appeal in a post-conviction proceeding. However, should the Government appeal your sentence or should the sentence that you've received be higher than the statutory maximum in this case or higher than the high end of the sentencing guidelines in this case then you would have the right to appeal. Otherwise, by signing this plea agreement, you are giving up or waiving your rights of appeal. Do you understand all of the terms that I've just described to you?

Rule 11 Tr., pp. 12-13. Petitioner stated he understood and had agreed to the terms described by Judge Hall. Id. at 13. Petitioner also affirmed that, other than the promises the government made in the plea agreement, no one on behalf of the government had made him any promises in order to get him to plead guilty. Id.

Next, Judge Hall heard a factual basis for Petitioner's guilty plea from Special Agent Jason Gustin with the Federal Bureau of Investigation. Id. at 18-26. SA Gustin described the manner in which Petitioner perpetrated fraud with respect to a property located at 644 Crawford Avenue, the subject of the count to which Petitioner was pleading guilty. Id. At the conclusion of SA Gustin's testimony, Judge Hall asked if Petitioner agreed with what the agent stated and asked Petitioner to state in his own words what he had done as it related to Crawford Avenue. Id. at 26. Petitioner

4

confirmed that he agreed with the agent's testimony and stated:

> In February of '05, I purchased the building from a bankruptcy court for $18,000. I worked on it. We had closed it on February - - excuse me - - on January 2nd, and we retained a Certificate of Occupancy on the building in August. I did not receive a down payment for the property and I did sign the HUD-1.

Id. Upon a question from Judge Hall, Petitioner further explained the fact that he did not get a deposit was a material misrepresentation on the HUD-1 form. Id.

Judge Hall then expressed his satisfaction with a factual basis for the plea, again confirmed that no one had forced Petitioner into pleading guilty, and verified Petitioner wished to plead guilty the bank fraud alleged in count two of the indictment because he was in fact guilty. Id. at 27. Judge Hall then summarized the proceedings as follows:

> [Petitioner] is competent. He fully understands the charge against him. There is a factual basis to support his plea of guilty on this charge. He knows the maximum punishment that could be imposed on the charge, and he knows his jury rights which he has knowingly and voluntarily waived.
>
> I further find that [Petitioner's] decision to plead guilty was voluntary, knowing, and not the result of any force, pressure, threats, or promises other than the promises made by the Government in the plea agreement.
>
> Therefore, Petitioner is adjudged guilty of Count Two, bank fraud, based on his plea of guilty.

Id. at 27-28.

C.  **Sentencing and Appeal**

The United States Probation Office then prepared a PSI. The advisory guideline range calculated in the PSI, based on a total offense level of twenty-four and a criminal history category of I, was fifty-one to sixty-three months. PSI ¶ 71. The total offense

level was calculated as follows: a base offense level of seven, a fourteen-point enhancement for a loss amount of more than $400,000 but less than $1,000,000, a two-point enhancement for use of a sophisticated means, a four-point enhancement for Petitioner's organization and leadership role in the criminal activity, and a three-point reduction for acceptance of responsibility. PSI ¶¶ 39-41, 43, 45, 47-48.

Prior to sentencing, Petitioner filed fourteen objections to the PSI, seven of which involved the "common theme" of loss calculation as it related to Southern Bank, three of which involved properties Petitioner deemed outside the scope of the indictment, and two of which involved the enhancement to the base offense level for use of a sophisticated means and being a leader of criminal activity. See PSI Addendum; CR 110-203, doc. no. 180 (hereinafter "Sent. Tr."). The last two objections were related to the final guideline calculation that was based on the errors alleged in objections one through twelve. See PSI Addendum; Sent. Tr., p. 37. After hearing argument from both sides at sentencing, Judge Hall overruled the first seven objections related to loss calculation. He recognized that there had been some difficulty obtaining first-hand documentation from Southern Bank, but in applying the preponderance of the evidence standard, Judge Hall determined that he could reasonably rely on the estimations of loss provided by the victim bank. Sent. Tr., pp. 19-20. Petitioner withdrew the objections related to properties believed to be outside the scope of the indictment because there was no impact on the guideline calculation. Id. at 20.

Petitioner conceded he qualified for the enhancement based on the use of sophisticated means, (id. at 20-21), and Judge Hall overruled the objection related to

6

Petitioner's leadership role in the criminal activity, finding that Petitioner and his co-defendant Raymond Turner both played leadership and organizational roles in the fraudulent scheme, (id. at 36-37). Based on Judge Hall's rulings on the first twelve objections, the last two objections related to the final guideline calculation were rendered moot. Id. at 37. Judge Hall then adopted the factual findings in the PSI and determined the applicable guideline range for imprisonment was fifty-one to sixty-three months. Id.

After allowing an opportunity for any victims to speak and hearing from Defendant in mitigation of sentence, Judge Hall sentenced Petitioner, *inter alia*, to a term of imprisonment of fifty-eight months and restitution in the amount of $451,656.53. Id. at 57; CR 110-203, doc. no. 175.

Although Petitioner's sentence fell within the guideline range and thus within the parameters of the appeal and collateral attack waiver, Petitioner filed an appeal. Defense counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), and after conducting an independent examination of the entire record which revealed no arguable issues of merit, the Eleventh Circuit affirmed Petitioner's conviction and sentence. U.S. v. Demello, 511 F. App'x 897, 898 (11th Cir. 2013) (*per curiam*). Petitioner next filed the § 2255 motion currently before the Court.

### D. § 2255 Proceedings

In his § 2255 motion, Petitioner raises four grounds for relief. In his first two grounds for relief, Petitioner argues that his restitution amount was improperly calculated, resulting in the entry of an improper judgment and an improper guideline

calculation.[1] (Doc. no. 1, pp. 4-5.) In his third ground for relief, Petitioner alleges that counsel provided ineffective assistance because they allowed him to be sentenced based on an incorrect restitution amount. (Id. at 7.) Lastly, Petitioner alleges misconduct by the Court and the government contributed to his sentencing based on an improper restitution amount. (Id. at 8.)

Respondent moves to dismiss Petitioner's § 2255 motion on the ground that it is barred by the collateral attack waiver in Petitioner's plea agreement. (See generally doc. no. 4.) In his opposition to the motion to dismiss, Petitioner contends he did not knowingly and voluntarily waive his right to attack his sentence. (Doc. no. 6, p. 2.)

## II. DISCUSSION

### A. There Is No Need For an Evidentiary Hearing.

Section 2255 does not require that the Court hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255(b). "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record." Holmes v. U.S., 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted). Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are

---

[1]As noted above, the judgment set restitution in the amount of $451,656.53. CR 110-203, doc. no. 175. Petitioner's base offense level was enhanced fourteen levels pursuant to U.S.S.G. § 2B1.1(b)(1)(H) because the loss amount was more than $400,000 but less than $1,000,000. PSI ¶ 40.

8

wholly incredible." Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. U.S., 365 F.3d 1225, 1238-39 (11th Cir. 2004) (*per curiam*).

While ineffective assistance of counsel claims often require a hearing for development of an adequate record, an evidentiary hearing is not required every time such a claim is raised. Vick v. U.S., 730 F.2d 707, 708 (11th Cir. 1984). Because Petitioner's claims are barred from review, lack merit as a matter of law, or are otherwise affirmatively contradicted by the record, no evidentiary hearing is necessary.

### B. Petitioner's Valid Collateral Attack Waiver Bars His Claims.

Petitioner's valid collateral attack waiver bars all of the claims raised in his § 2255 motion. It is well settled that waiver of the right to attack a sentence and conviction on direct appeal or by habeas petition is enforceable if the waiver is knowing and voluntary. U.S. v. Warner-Freeman, 270 F. App'x 754, 757 (11th Cir. 2008) (*per curiam*); U.S. v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); U.S. v. Bushert, 997 F.2d 1343, 1345 (11th Cir. 1993); see also Vaca-Ortiz v. U.S., 320 F. Supp. 2d 1362, 1364-67 (N.D. Ga. 2004) (applying case law on waiver of direct appeal to waiver of collateral attack by § 2255 motion). "To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver." Weaver, 275 F.3d at 1333. If the government meets this burden, then the waiver is valid. See U.S. v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (*per curiam*) (enforcing waiver provision where defendant was specifically questioned during plea proceedings about waiver); U.S. v. Howle, 166 F.3d

9

1166, 1168-69 (11th Cir. 1999); U.S. v. Benitez-Zapata, 131 F.3d 1444, 1146-47 (11th Cir. 1997).

Here, the record confirms the existence of a valid collateral attack waiver. The plea agreement signed and verified by Petitioner explicitly set forth that he was voluntarily and expressly waiving his right to collaterally attack his conviction and sentence "in any post-conviction proceeding, including a § 2255 proceeding." CR 110-203, doc. no. 148, pp. 6-7. However, Petitioner could file a *direct appeal* of his sentence if the government appealed or if the sentence exceeded the statutory maximum or the advisory sentencing guidelines range. Id. at 7. Neither of those events occurred in this case.[2] Moreover, Judge Hall thoroughly and explicitly reviewed the appeal and collateral attack waiver provision in the plea agreement. Rule 11 Tr., p. 13. After Judge Hall concluded his review, Petitioner acknowledged that he understood and agreed with the terms as explained by Judge Hall. Id.

While Petitioner would have the Court ignore his responses to Judge Hall's questions, "solemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). The record before the Court demonstrates Petitioner's agreement to the collateral attack waiver was knowing and voluntary. Therefore, enforcement of this valid collateral attack waiver bars all of Petitioner's claims in this case. See Williams v. U.S., 396 F.3d 1340, 1341-42 (11th Cir. 2005) (precluding claim

---

[2] As explained above, when Petitioner did file a direct appeal, the Eleventh Circuit affirmed the conviction and sentence, finding no arguable issues of merit. Demello, 511 F. App'x at 898.

for ineffective assistance of counsel at sentencing based on valid sentence-appeal waiver); Brown v. U.S., 256 F. App'x 258, 262 (11th Cir. 2007) (*per curiam*) (refusing to consider merits of sentencing argument in § 2255 proceeding based on valid sentence-appeal waiver provision in plea agreement); Carstarphen v. U.S., Civ. Action No. 07-0417-KD, 2008 WL 4369010, at *2-3 (S.D. Ala. Sept. 25, 2008) (barring review of claims of prosecutorial misconduct in § 2255 proceeding based on valid collateral attack waiver); U.S. v. Martin, 549 F. App'x 888, 889-90 (11th Cir. 2013) (*per curiam*) (refusing to consider claims of PSI errors based on knowing and voluntary sentence appeal waiver).

Additionally, even if Petitioner's claims about the calculation of his restitution amount were not barred by his valid collateral attack waiver, a § 2255 motion is not the proper vehicle to challenge a restitution amount. Mamone v. U.S., 559 F.3d 1209, 1210-11 (11th Cir. 2009) (*per curiam*). Nor is there even a scintilla of evidence of misconduct by the trial court or the prosecution regarding the calculation of the restitution/loss amount. The issue of documentation for the loss amount was discussed extensively at the sentencing hearing. Judge Hall recognized that there had been some difficulty obtaining first-hand documentation from Southern Bank, but in applying the preponderance of the evidence standard, Judge Hall determined that he could reasonably rely on the estimations of loss provided by the victim bank. Sent. Tr., pp. 4-20; see also U.S. v. Bradley, 644 F.3d 1213, 1290 (11th Cir. 2011) ("And it is not required that the district court constrain itself to absolute figures; instead, the court may rely on 'specific circumstantial evidence' to estimate the amount of loss." (citing U.S. v. Willis, 560 F.3d

1246, 1251 (11th Cir. 2009)).

### C. Petitioner's Guilty Plea was Knowingly and Voluntarily Entered.

Having determined that Petitioner knowingly and voluntarily waived the right to attack his sentence and conviction on direct appeal or by collateral attack in a § 2255 motion, the Court will lastly address any overarching implication derived from the § 2255 motion that Petitioner's guilty plea was otherwise not knowingly and voluntarily entered. For if a guilty plea is not knowingly and voluntarily entered, that "would in turn mean that a court could not enforce a waiver contained within that plea agreement." Vaca-Ortiz, 320 F. Supp. 2d at 1365 (citing Bushert, 997 F.2d at 1350-51). The record is clear that any such argument is without merit.

### 1. Standard for Enforceability of Guilty Pleas.

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea. U.S. v. Broce, 488 U.S. 563, 569 (1989). In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary. Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). The Eleventh Circuit has described the requirements for a valid guilty plea as follows: "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights. A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense." U.S. v. Brown, 117 F.3d 471, 476 (11th Cir. 1997). A guilty plea may be involuntary in a constitutional

12

sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." Id. Thus, a defendant must receive "real notice of the true nature of the charged crime." Id.

The Eleventh Circuit has further explained that, for a guilty plea to be knowingly and voluntarily made, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." U.S. v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (*per curiam*) (citations omitted). In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea." Id. at 1020 (quoting U.S. v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

### 2. Judge Hall's Colloquy with Petitioner Satisfied the Three Core Principles Required for Acceptance of a Guilty Plea.

Judge Hall reviewed the charges in Petitioner's case, as well as the possible statutory penalty for the charge to which Petitioner was pleading guilty, and Petitioner testified that he understood the possible penalties. Id. at 5, 13-14. Petitioner also admitted to the facts presented by the government as the factual basis for the plea and told Judge Hall that he wanted to plead guilty to the bank fraud charge delineated in the plea agreement. Id. at 26-27. Judge Hall provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed he understood his

decision to plead guilty would result in a waiver of these rights. Id. at 9-11. Petitioner testified that no one had made him any promises other than those contained in the plea agreement to get him to plead guilty, and Judge Hall made a finding that Petitioner's decision to plead guilty was not the result of force, pressure, threats or promises other than those in the plea agreement. Id. at 13, 28. Petitioner also testified that he had reviewed the plea agreement with his attorneys before he signed it and was satisfied with the help he had received from counsel. Id. at 9, 11.

Thus, Judge Hall's thorough plea colloquy ensured that Petitioner understood both the nature of the bank fraud charge and the consequences of his guilty plea, and that Petitioner was not coerced into pleading guilty. See Moriarty, 429 F.3d at 1019. Petitioner has not argued, let alone shown a reasonable probability that but for any alleged error at the Rule 11 proceeding he would not have entered his guilty plea. See Dominguez Benitez, 542 U.S. at 83. Indeed, Petitioner specifically states in his response to the motion to dismiss that he is not contesting he is guilty of the charge of bank fraud to which he pleaded guilty; rather he contests his sentence. (Doc. no. 6, p. 2.) However, "Petitioner cannot circumvent the terms of his plea agreement merely because he does not like the outcome at sentencing." Bradshaw v. U.S., No. 8:03cv1960T30MAP, 2005 WL 1669036 (M.D. Fla. July 12, 2005) (citing Bushert, 997 F.2d at 1350).

As such, Petitioner will not now be heard to claim that his guilty plea was not knowingly and voluntarily entered. Such assertions are contradicted by the record of the Rule 11 hearing and Petitioner's sworn testimony at that proceeding. "[S]olemn declarations in open court carry a strong presumption of verity" and "constitute a

formidable barrier in any subsequent collateral proceedings." Blackledge, 431 U.S. at 74; see also U.S. v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (noting that "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely"). Accordingly, the Court finds that Petitioner is not entitled to relief on any argument set forth in his § 2255 motion.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Respondent's motion to dismiss be **GRANTED** (doc. no. 4), that Petitioner's § 2255 motion be **DISMISSED** without an evidentiary hearing, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 21st day of July, 2014, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA